## DROWNE v. GREAT LAKES TRANSIT CORPORATION.

(District Court, W. D. New York. June 25, 1924.)

No. 1273.

**1. Shipping ⊙84(3)—Steamship company held bound to provide suitable guard for manhole during repairs to ship.**

Steamship company, and not construction company engaged in repairs, *held* required to provide suitable guard for manhole on ship, and liable for death of employee of construction company falling into manhole.

**2. Shipping ⊙84(3, 5)—Shipowner held responsible for failure to supply hatch hooks free from impairment, and deceased not negligent.**

Shipowner *held* responsible for death of riveter, falling through manhole by reason of defects in hatch hooks which he and his companion were using, where they were the only ones which could be found after reasonable search, and deceased not guilty of contributory negligence.

**3. Death ⊙95(3)—$13,500 allowed for death of riveter on ship.**

$13,500 is a reasonable award for death of riveter on ship having life expectancy of 25 years and earning capacity of about $1,800 annually.

In Admiralty. Libel by Martha Drowne, as administratrix of the personal estate of George Drowne, deceased, against the Great Lakes Transit Corporation. Decree for libelant.

Sullivan, Bagley & Wechter, of Buffalo, N. Y., for libelant.

Brown, Ely & Richards, of Buffalo, N. Y., for respondent.

HAZEL, District Judge. The freighter Muncy, while in winter quarters at Buffalo river, and in preparation for the 1923 season of navigation, contracted for certain repair work with the Buffalo Marine Construction Company, the employer of George Drowne, who was killed in consequence of falling through a manhole in the betweendecks of the steamship on February 21, 1923. Drowne and other workmen were aboard the steamship, repairing steel plates on the starboard side of the vessel in No. 1 hold. Number 1 hatch, which is 18 feet long and about 7½ feet wide, has wooden covers; each cover section being 7½ feet long, 1 foot wide, and about 3½ inches thick. To remove the covers it is necessary to use hatch hooks, which fit into or around an iron bar or cleat on the cover or planking. Aboard the steamship in between-decks there is a circular manhole 30 inches in diameter and about 6 feet rearward of the side of hatch No. 1. When the cover of the manhole is in position, it is flush with the deck, and to reach the hold it is necessary to go through the opening by a steel ladder, which extends to the bottom.

According to the evidence, when the vessel was given over to the construction company, the cover of the manhole was in place, and also hatch covers upon the hatches. These covers were removed and replaced by the workmen as occasion required. At the time of the accident workmen were at work in No. 1 hold, and the manhole betweendecks was open. The intestate was a riveter, and with another workman named Cappola he had been engaged in lowering material through the manhole to the workmen below, and while so engaged was asked by some of the riveters to have the hatch cover of No. 1 hatch taken off to facilitate the passage of air and the exit of gases and smoke which had collected below. Drowne and Cappola stopped their work, and after hunting around for hatch hooks, and finding two, they at once began removing the covers. They had removed one or two planks or sections, and had hooked into another, Drowne standing at one side and Cappola at the other, when the latter, upon raising his end, slipped, causing the hatch hook to slip from its grip on the bar, and the cover fell into the hold, while Drowne lost his footing, causing his hook to slip also, and he involuntarily stepped backward towards and through the open manhole to the bottom of the hold and was killed.

The negligence of the respondent, owner of the Muncy, is contended on the ground of failure to supply suitable equipment for guarding the manhole opening, and also for failure to supply proper hatch hooks for raising the hatch covers. In op-

position, respondent contends as to the first ground of negligence that the steamship was in the control of an independent contractor at the time of the accident, and accordingly she owed no duty to the deceased; that she was in a safe condition when the workmen went aboard to make repairs, the manhole was covered, the hatch covers in position, and that the place of work was made unsafe by Drowne and Cappola in leaving the opening unguarded.

The evidence in my opinion does not sustain the contention. The ship, it is true, had aboard at the time of the occurrence numerous workmen, who were under the direction of their foreman; but there were also two representatives of claimant aboard, including a shipkeeper. It was not turning over the control of the vessel to the construction company, but simply, as I view it, an invitation to the workmen of the construction company to come aboard for the purpose of repairing certain parts of the vessel, and the duty rested upon her to furnish a reasonably safe place for doing the work. It was known to respondent that the manhole would of necessity have to be opened for access to the hold where the repair work was to be done, and that when it was open it constituted a menace which could only be removed or the danger lessened by a suitable guard rail. Indeed, the evidence shows that a portable guard rail was in place during the season of navigation to protect the seamen, the same having been provided by direction of the steamboat inspector; but it was not available to the deceased at the time of the accident. The guard rail or other suitable appliance was not in between-decks for use in affording protection to the deceased.

[1] Proctor for respondent argued that, since the deceased himself had left the manhole open, the duty rested upon him to protect himself from falling through, and that in the exercise of care he should have provided temporary covering; but I find the argument unpersuasive, since it was necessary that the manhole should be kept open continuously for the workmen in No. 1 hold, and, moreover, the argument ignores the duty of the steamship to provide suitable equipment for the protection of the workmen since the contract under which the workmen were properly aboard did not carry with it the exclusive control of the vessel during the progress of the work. An ordinary inspection of the between-decks before the workmen came aboard would have disclosed the necessity of putting up a guard rail around the manhole. As was said by the Circuit Court of Appeals in Steiner v. The Spokane, 294 Fed. 242: "When the vessel contracted with the Construction Corporation for the repairs, it assumed the obligation to keep all parts of the ship under its control reasonably safe for the employees of the Construction Corporation. It could not relieve itself of this duty by delegating it to the charterer."

The construction company was not required in the discharge of its duty to provide a suitable guard for the manhole, and the adjudications cited by proctor for respondent are inapplicable. In those cases for the most part the ships were properly equipped and appliances were at hand for use by the workmen and for their safety.

[2] Nor can respondent avoid responsibility for failure to supply hatch hooks free from impairment. The proofs do not sustain the claim that the deceased and Cappola, his fellow workman, negligently selected the two hatch hooks used by them. It was not at all a matter of selection from the ship's supply of hatch hooks, as was the case in Jeffries v. De Hart, 102 Fed. 765, 42 C. C. A. 615. Only the two hooks that were used were found by Drowne and Cappola after reasonable search, and upon inspection after the accident their defective condition from prior use was readily discerned, which rendered them, or the one used by Cappola, unable to securely hold the lifted cover. It was testified by the mate of the steamship that 15 or 20 good hooks were aboard the ship two months before the accident; but there was no satisfactory testimony to require finding that hooks other than those actually used were available to the deceased. I find, therefore, that the proximate cause of the death of Drowne was the primary negligence of the respondent in its omissions of duty as herein particularized. The deceased, of course, knew that the manhole was uncovered when he was required to uncover the hatch cover; but his attention obviously was distracted therefrom. His falling into the manhole was involuntary and primarily resulted from a defective and impaired hatch hook, and accordingly he was not guilty of contributory negligence.

[3] The deceased at the time of his death was strong and healthy, aged 44 years, and his expectancy of life was 25 years. His earning capacity was about $1,800 annually. In all probability the widow would have received one-half for her maintenance, which, however, as the years passed, would in all probability have decreased.

Taking these elements into consideration, an award of $13,500 is believed reasonable, and for that amount and costs libelant may have a decree.